UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAVID P., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 2:20-cv-00020-LEW |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) |
| | ) |
| Defendant | ) |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the November 26, 2018, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 14-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disc disease with healed compression fractures in the thoracic spine. (R. 17-18.)  The ALJ further determined that Plaintiff has the residual functional capacity (RFC) to perform light work, except that he can occasionally reach, pull and push with his bilateral upper extremities and he can occasionally stoop, kneel, crawl, and climb ladders, ropes and scaffolds. (R. 18.)

The ALJ concluded that Plaintiff could not return to past relevant work as actually or generally performed (R. 21), but he could perform other gainful employment in jobs existing in substantial numbers in the national economy. (R. 21-22.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence, that the ALJ failed to evaluate properly the intensity, persistence, and limiting effects of Plaintiff's symptoms, and that the ALJ did not accord appropriate weight to the treating source statements.

**A.  The RFC Assessment/Evaluation of Treating Source Statements**

Plaintiff maintains that while working in the sale and service of large cranes on March 9, 2011, he suffered an injury to his head and neck, which injury ultimately resulted in his inability to work beginning in May 2013.

In his assessment of Plaintiff's claim and in the development of the RFC, the ALJ discussed in detail the medical record, including the expert medical opinions.  The ALJ gave great weight to the opinion of Fred Fridman, D.O., who examined Plaintiff on June 2, 2017, at the request of the state agency. Dr. Fridman concluded Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; had no limitations on sitting, standing, walking, stooping, and climbing ramps or stairs; could occasionally kneel, crouch, crawl, and climb ladders, ropes, and scaffolds; and could occasionally reach, push, and pull with both arms. (R. 397.)  Dr. Fridman's opinion supports the ALJ's RFC determination. The issue is whether Dr. Fridman's opinion is consistent with and supported by the medical record.

First, Dr. Fridman's opinion is supported by the objective findings during his examination.  While Plaintiff had painful range of motion in the cervical spine (R. 397), he did not have any noticeable abnormalities in his neck, extremities, and muscle tone, with

3

no evidence of tremor. (R. 394.) Plaintiff also demonstrated that he could lift, carry and handle light objects; squat and rise from a standing position with ease; stand up from a sitting position with ease; and walk on his heels and toes with ease. (R. 396.)

In addition, as the ALJ accurately summarized, other medical records, including the primary care records in January 2017, the evaluation of Gwen Simons, PT, the physical findings of Alexander Mesrobian, M.D., who examined Plaintiff in June 2014 in connection with Plaintiff's workers' compensation claim, and the opinions of the state agency experts are consistent with and support Dr. Fridman's findings and the ALJ's RFC assessment. For instance, Ms. Simons found Plaintiff's cervical range of motion to be "within normal limits" and his upper extremity range of motion to be normal. (R. 750.) She also determined Plaintiff to have normal strength in both arms and that he had "no complaints of numbness, tingling radiating or radicular pain" in his arms. (R. 751.) Similarly, while Dr. Mesrobian found that Plaintiff had "very limited " forward flexion in his neck (R. 774) was unable to perform sedentary work, an opinion to which the ALJ supportably gave little weight, he found that Plaintiff "was able to perform rotary flexion of his neck with mild limitation" and that the ranges of motion of Plaintiff's shoulders "displayed full abduction flexion, internal and external rotation" and that "moving his shoulders did not appear to cause undue distress." (R. 774.) Furthermore, the agency experts found that Plaintiff could perform medium work. (R. 69-70, 84-85.)

Despite the medical support for the ALJ's RFC assessment, Plaintiff contends the ALJ's decision is not supportable because the ALJ did not afford appropriate weight to the opinions of Plaintiff's treating providers, Carl DeMars, M.D., and James Kneebone, D.O.

The ALJ gave little weight to the opinions of the treating providers. (R. 20.)

A "treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Gilson v. Colvin*, No. 1:12-cv-376-GZS, 2013 WL 5674359, at *2 (D.Me. Oct. 17, 2013) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).[2] An ALJ is not required to consider a treating physician's opinion controlling, however. *See Bowker v. Comm'r, Soc. Sec. Admin.*, No. 2:13-cv-122-DBH, 2014 WL 220733, *3 (D.Me. Jan. 21, 2014) (fact that some of treating physician's opinions were inconsistent with other medical evidence in the record "deprives them of controlling weight").

Here, because the opinions of Drs. DeMars and Kneebone are substantially similar, the ALJ understandably discussed their opinions simultaneously (e.g., "the evidence, for the reasons discussed above, does not support their very similar assessments," R. 20.) A review of the record reveals that the ALJ supportably found that their opinions appear to be based, at least in part, on Plaintiff's statements, which were inconsistent with contemporary records and objective medical evidence. (R. 18, 20.)

As the ALJ noted, for instance, although Plaintiff reported to Dr. DeMars in March 2018, six months prior to Dr. DeMars' completion of the form medical source statement,

---

[2] For claims filed on or after March 27, 2017, such as Plaintiff's, the regulations that govern the ALJ's evaluation of opinion evidence provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R § 404.1520c(a). Plaintiff applied for benefits on January 31, 2017. (R. 15.)

that he had "terrible" neck pain, the examination revealed that his neck was "supple" and he had "no focal deficits." (Exh. 19F.) The ALJ also noted that John Hall, M.D., who examined Plaintiff in May 2018 upon referral from Dr. DeMars, found Plaintiff to have functional range of motion and "5/5 motor strength throughout all four extremities." (R. 19, 536.)  While Dr. Hall also found that the cervical spine range of motion assessment revealed that extension and flexion caused discomfort in the "posterior cervical paraspinal muscles" (R. 536), the finding is not inconsistent with the RFC.  The ALJ further noted that when Plaintiff was examined in a hospital emergency room following an automobile accident in May 2018, the exam revealed that Plaintiff had "normal range of motion" in his neck. (R. 19, 469.)

Although the ALJ arguably misinterpreted portions of Dr. Kneebone's records and could have commented more extensively on the opinions of the treating sources, by contrasting the opinions with portions of the medical records and the other medical opinions, the ALJ provided good reasons for affording little weight to the treating source statements. *Vining v. Astrue*, 720 F. Supp. 2d 126, 134 (D. Me. 2010) (ALJ not required to adopt treating source assessment " as long as [the ALJ] supplied 'good reasons' for doing so (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2))).

In sum, therefore, the ALJ did not err when he gave little weight to the opinions of Plaintiff's treatment providers and the ALJ's RFC assessment is otherwise supported by substantial evidence.

B.  **Plaintiff's Subjective Statements**

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's subjective

6

complaints, including his complaints of pain. The ALJ concluded that Plaintiff's statements regarding the intensity, persistence and effect of his symptoms were not consisted with the medical evidence and other evidence.

In support of his conclusion, in addition to the medical evidence referenced above, the ALJ noted an October 2013 MRI of Plaintiff's cervical spine that reflected "'mild' and 'healed' thoracic fracture deformities, 'minimal' degenerative changes that were stable compared to a study done in 2012, and no evidence of neural compromiser" (R. 18, citing Exh. 15F); a note of Dr. Mesrobian in June 2014 that described Plaintiff as "healthy appearing" (R. 18, citing Exh. 21F); Plaintiff's limited medicine regimen for pain (R. 19, 20); the relief Plaintiff received from massage therapy (R. 20, citing Exh. 17F); and the fact that Plaintiff engaged in bird hunting. (R. 20.)[3]

Plaintiff cites to other evidence in the record that the ALJ failed to discuss, which evidence is consistent with his complaints of pain and his alleged limitations. The fact that the record includes evidence that might conflict with the evidence upon which the ALJ relied and could support a different conclusion, however, does require a different result. "The fact that there may be some evidence in the record that would support [Plaintiff's] view of [his] pain as disabling is not conclusive. It is the role of the administrative law judge to choose which evidence upon which to rely and which to reject. When [] the

---

[3] Plaintiff contends the ALJ misrepresented his testimony regarding the bird hunting activity as he testified that his bird hunting would have consisted of him riding on a dirt road in a truck. (Pl. SOE at 10-11.) While the ALJ cited Plaintiff's bird hunting "as an activity suggestive of greater functionality than he has alleged," (R. 20), the ALJ did not appear to focus significantly on the activity in his assessment of Plaintiff's statements. Instead, the ALJ appears to have relied more on the medical evidence and Plaintiff's report of symptoms to medical providers and evaluators.

administrative law judge has set forth [the ALJ's] reasons for doing so, nothing more is required." *Murphy v. Astrue*, No. 2:11-cv-241-NT, 2012 WL 1067683, at *4 (D.Me. Mar. 29, 2012), *Rep't. and Rec. Dec. affirmed*, 2012 WL 1416652 (Apr. 24, 2012).  The ALJ has adequately and supportably discussed his assessment of Plaintiff's statements.

In this case, Plaintiff in essence asks the Court to weigh the conflicting evidence, "[b]ut the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts." *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  Here, the ALJ assessed and weighed the evidence, including the treating source statements and Plaintiff's statements, and the ALJ's decision is supported by substantial evidence on the record.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 20th day of November, 2020.